**ALBERTA GAS CHEMICALS, LTD.,**
**Plaintiff-Appellant,**

v.

**CELANESE CORPORATION and**
**Celanese Chemical Company,**
**Inc., Defendants-Appellees.**

**No. 782, Docket 80–9021.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 26, 1981.
Decided May 12, 1981.

James M. Brachman, New York City (Freeman, Meade, Wasserman & Schneider, Melvyn Freeman, Jack Gumpert Wasserman, Lawrence S. Fogelson, Barbara E. Olk, New York City, of counsel), for plaintiff-appellant.

J. Asa Rountree, New York City (Debevoise, Plimpton, Lyons & Gates, Steven Klugman, New York City, of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and MOTLEY, District Judge.*

---

* Honorable Constance Baker Motley, United States District Judge, Southern District of New York, sitting by designation.

FEINBERG, Chief Judge:

This appeal raises unusual issues regarding the power of an administrative agency to insure the integrity of proceedings before it. Alberta Gas Chemicals, Ltd. (Alberta), a Canadian corporation, appeals from a judgment of the United States District Court for the Southern District of New York, Abraham D. Sofaer, J., dismissing Alberta's complaint against Celanese Corporation and Celanese Chemical Company, Inc., 497 F.Supp. 637 (collectively referred to as Celanese). The complaint alleged that Celanese had perpetrated a scheme to defraud and unfairly compete with Alberta by interfering with its construction of new facilities in Canada, and by hindering its efforts to sell methanol in the United States.[1] The gravamen of the complaint was that Celanese presented false testimony before the United States International Trade Commission (Commission), which was considering whether imports from Canada were injuring, or were likely to injure, the domestic methanol producing industry. On Celanese's motion, Judge Sofaer dismissed Alberta's complaint. As indicated below, we adopt one of the alternate grounds indicated in the opinion of the district court, and remand this case to the district court to be held pending further proceedings in accordance with this opinion.

I

The relevant facts may be simply stated: In March 1979, the Treasury Department concluded that Canadian methanol, exported by Alberta, was being sold in the United States at less than fair value. 44 Fed.Reg. 19,090 (March 30, 1979). This triggered hearings before the Commission in May 1979 pursuant to the Antidumping Act, 19 U.S.C. § 160 et seq., to determine whether the sale here of the Canadian methanol at less than fair value was likely to injure the

---

1. Methanol is an organic chemical used primarily in manufacturing other chemicals and as a solvent.

American methanol industry.[2] At the hearing, the Commission received oral and written testimony from many of those involved in the American methanol industry, including employees of Celanese, this country's largest producer. 44 Fed.Reg. 40,734–35 (July 12, 1979).

In June 1979, the Commission decided by a 3–2 vote that the sale in this country of Canadian methanol was likely to be detrimental to domestic producers in the future. This finding of possible future harm required the Treasury Department to issue a Finding of Dumping under 19 U.S.C. § 160(a), thus subjecting future imports of Canadian methanol to a special antidumping duty. See 44 Fed.Reg. 44,154 (July 27, 1979). In August 1979, Alberta challenged this determination by filing an action in the United States Court of International Trade.[3]

According to Alberta, it discovered in November 1979 that Celanese employees had perjured themselves in the antidumping proceeding before the Commission by failing to disclose Celanese's plans to expand substantially its methanol producing facilities in Canada and in the United States, and by deliberately underestimating the projected United States demand for methanol. By the time Alberta allegedly discovered this perjury, it had already filed its action in the Court of International Trade, as indicated above. Nevertheless, Alberta did not utilize this information in connection with its case pending there. Nor did Alberta call the alleged perjury to the attention of the Commission. Instead, it filed the present action in April 1980 in the Southern District basing jurisdiction on diversity. Alberta, as already indicated, alleged that Celanese was engaged in an unlawful scheme to hinder Alberta's efforts to produce methanol in Canada and to sell it in the United States, of which the perjury

before the Commission was an integral part. The complaint further alleged that the Commission would not have concluded that future importation of Canadian methanol was likely to hurt domestic producers but for the perjured testimony. The complaint prayed for an injunction requiring Celanese to disclose the true facts to the Commission, and also sought damages, both compensatory and punitive.

In its answer, Celanese denied the essential allegations of the complaint, including the perjury, and moved for judgment on the pleadings. Celanese asserted in the alternative that the district court either lacked jurisdiction, or should not exercise its jurisdiction, and that even if the court did reach the merits, the complaint did not state a claim upon which relief could be granted. In a memorandum opinion and order dated October 8, 1980, Judge Sofaer concluded that under federal law, appellant's complaint failed to state a cause of action because it did not allege any wrongful conduct on the part of Celanese other than the alleged perjury before the Commission. The judge went on to say that even if the complaint did state a cause of action, the federal court's jurisdiction over the dispute seemed "dubious" because the matter was within the exclusive jurisdiction of the Court of International Trade; finally, the court noted that under the doctrine of primary jurisdiction the issues relating to Celanese's conduct during the hearing before the Commission should be resolved, in the first instance, by the Commission. This appeal followed.

## II

Based upon the foregoing, the parties have presented and thoroughly briefed a number of legal issues, but we do not find it necessary or appropriate to reach most of

---

2. The antidumping provisions now appear as part of the Tariff Act of 1930, 19 U.S.C. § 1671 et seq. Because the proceedings at issue here were conducted under the old law, we will refer throughout this opinion to the provisions of the Antidumping Act.

3. Since the district court filed its opinion, the United States Customs Court has been renamed the United States Court of International Trade. See Customs Courts Act of 1980, Pub.L. No. 96–417 (Oct. 10, 1980). For purposes of clarity, we will refer to the court as the Court of International Trade.

them. It is quite clear to us that Alberta is trying to obtain a reversal of the Commission's ruling without bothering to attempt to utilize other remedies available to it, and we see no reason to countenance such use of the federal courts.

The claimed perjurious testimony by Celanese related to its plans to expand its methanol production capacity and to its estimate of demand for methanol in the United States. The district court found that the "central issue" in this litigation was whether "but for Celanese's alleged misrepresentations, the Commission would have refused to impose dumping duties on Alberta Gas." Alberta disputes this, arguing that a decision in its favor in this lawsuit would not affect the Commission's determination that imports of Canadian methanol were likely to injure the American methanol industry. Whether or not this is so—and it seems unlikely—the only specific fraudulent action that Alberta asserted in the district court was the alleged perjury before the Commission.[4] Moreover, to prove that it suffered damage from the alleged perjury, Alberta must show that this testimony influenced the Commission to come to a result it would not otherwise have reached. Without that connection, Alberta's damages would be caused by the legitimate action of the Commission, and not by the allegedly tortious conduct by Celanese.

Under the circumstances, it makes good sense to allow the Commission to determine initially whether there was perjury and if there was, whether the perjury affected the result before the Commission. There can be little doubt that the Commission's "insight gained through experience," *Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–495, 96 L.Ed. 576 (1952), will be helpful in determining whether Celanese employees misrepresented the estimated United States demand for methanol and Celanese's intentions concerning the construction of additional production facilities. Resolution of such questions will be materially aided by the Commission's knowledge of how such estimates and projections are customarily calculated, utilized, and revised, by its intimate familiarity with the record of the entire antidumping proceeding, and by its expertise in the field of international commerce. Moreover, the Commission will certainly be in a far better position than the district court to determine whether it would have reached a different conclusion but for the allegedly perjured testimony. Indeed, appellant does not seriously argue that the Commission would not be in a better position than the district court to resolve these issues initially. Rather, appellant contends that the Commission lacks the authority either to reconsider its decision or to grant the relief Alberta seeks in this action. We find both arguments without merit.

Alberta contends that the Commission cannot reconsider a prior determination on the basis of newly discovered facts, if they existed at the time of the initial decision. Appellant claims that the Commission regulations that deal with altering or amending a prior determination apply only when circumstances have changed since the initial decision, or to correct technical errors. 19 C.F.R. §§ 207.45–46. Whether or not this construction of the regulations is correct, a more fundamental source of authority exists for allowing the Commission to determine initially the issues in this litigation: the inherent power of any administrative agency to protect the integrity of its own proceedings.

"The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question."

4. In its brief and argument before this court, Alberta asserted that Celanese had in 1976 "vigorously opposed" Alberta's application to build a methanol production facility in Canada, and that some "90 days after the Commission's decision" in 1979, in an application to the Alberta Energy Resources Conservation Board, Celanese had made a "complete reversal" of its earlier estimate of the demand for methanol in the United States. Celanese alleges that neither of these arguments was presented to the district court. Even if properly before us, however, these allegations do not change the focus of the complaint on the alleged perjury before the Commission.

*Universal Oil Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946). The Court there cited *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1943), in which the Court stated, "[t]his equity rule, which was firmly established in English practice long ago before the foundation of the republic, ... [was] developed and fashioned to fulfill a universally recognized need for correcting injustices which ... are deemed sufficiently gross to demand a departure from rigid adherence to ... the rule [of finality]." Id. at 244, 64 S.Ct. at 1000. See also 7 Moore's Federal Practice ¶ 60.16[5] at 88–90 (1979). This inherent power has been confirmed by the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 60(b); 7 Moore's Federal Practice ¶ 60.33.

This universally accepted rule has been applied to proceedings before federal administrative agencies. Professor Davis states that "[e]very tribunal, judicial or administrative, has some power to correct its own errors or otherwise appropriately to modify its judgment, decree, or error." 2 K. Davis, Administrative Law Treatise § 18.09 at 606 (1958). As the Court of Claims has pointed out, "it is often the case that reconsideration of a prior decision, within a reasonable period of time, is absolutely essential to the even administration of justice.... [I]t may be imperative for the tribunal to consider new developments or newly discovered evidence in order to facilitate the orderly and just resolution of conflict. More frequently, reconsideration is often the sole means of correcting errors of procedure or substance." *Bookman v. United States*, 453 F.2d 1263, 1265 (Ct.Cl. 1972). See also *United States v. Sioux Tribe*, 616 F.2d 485, 493 (Ct.Cl.), cert. denied, 446 U.S. 953, 101 S.Ct. 2716, 65 L.Ed.2d 844 (1980) ("It is a well established principle that an administrative agency may reconsider its own decisions. 'The power to reconsider is inherent in the power to decide.' ").

It is hard to imagine a clearer case for exercising this inherent power than when a fraud has been perpetrated on the tribunal in its initial proceeding. In *Greene County Planning Board v. Federal Power Commission*, 559 F.2d 1227, 1233 (2d Cir. 1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 591 (1978), we stated that "an agency does have an obligation to make corrections when it has been relying on erroneous factual assumptions ...." See also *Hudson River Fishermen's Association v. Federal Power Commission*, 498 F.2d 827, 833–34 (2d Cir. 1974). Here, according to Alberta's allegations, the Commission relied on "erroneous factual assumptions" that were deliberately presented by Celanese's witnesses to persuade the Commission to reach an incorrect conclusion concerning the possible future effects of the importation of Canadian methanol. The public interest in preventing perjury is obvious; and there is also a clear public interest in a correct determination of whether imports of methanol should be restricted, since the restrictions will almost certainly affect the price American consumers pay for this product. These considerations far outweigh any interest in the finality of the Commission's initial determination, particularly when the Commission's decision is still pending before the Court of International Trade.

Alberta's other objection to requiring it to seek relief initially from the Commission is that the Commission has no power to award damages. This argument misperceives the nature of the doctrine of primary jurisdiction. As Professor Davis points out, "[t]he test is not whether some parts of the case are within the exclusive jurisdiction of the courts; the test is whether some parts of the case are within the exclusive jurisdiction of the agency. Because of the purpose of the doctrine—to assure that the agency will not be by-passed on what is especially committed to it—and because the resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought." *Davis, supra,* § 19.07 at 39. The Supreme Court has consistently followed this approach by remanding cases for initial resolution by administrative agencies, when it was undisputed that those agencies did not have the power to award the damages

**14**

sought in the federal court action. See, e. g., *Thompson v. Texas Mexican Railway*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); *General American Tanker Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361 (1940); *United States v. Interstate Commerce Commission*, 337 U.S. 426, 464, 69 S.Ct. 1410, 1430, 93 L.Ed. 1451 (1949) (Frankfurter, J., dissenting).

We find no reason, therefore, not to give the Commission the opportunity to resolve in the first instance the major issues in this litigation. We believe that the Commission's decision as to whether Celanese employees perjured themselves before the Commission, and if so, whether but for such perjury the Commission would have reached a different result, will materially affect, or perhaps even definitively conclude, the federal action now before us. In light of our disposition of this case, we find it unnecessary to address appellee's argument that this matter falls within the exclusive jurisdiction of the Court of International Trade, or the district court's conclusion that appellant failed to state a cause of action.

The case is remanded to the district court with instructions to stay all proceedings before it until such time as the Commission determines whether (1) Celanese employees did commit perjury during the Canadian methanol proceeding, and (2) whether but for such perjury, the Commission would have reached a different conclusion regarding the possible future effects of the importation of Canadian methanol.