Slip Op. 07-12

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
TOKYO KIKAI SEISAKUSHO, LTD., and       :
TKS (U.S.A.), Inc.,                      :
                                        :
            Plaintiffs,                  :
                                        :
      and                               :
                                        :
MITSUBISHI HEAVY INDUSTRIES,             :
LTD.,                                   :
                                        :       Before: Judith M. Barzilay, Judge
            Plaintiff-Intervenor,        :       Consol. Court No. 06-00078
                                        :       **Public Version**
      v.                                :
                                        :
UNITED STATES,                          :
                                        :
            Defendant,                   :
                                        :
      and                               :
                                        :
GOSS INTERNATIONAL                       :
CORPORATION,                            :
                                        :
            Defendant-Intervenor.        :
_____ :

## OPINION

[Plaintiffs' motion for judgment on the agency record is granted in part and denied in part; Plaintiff-Intervenor's motion for judgment on the agency record is granted; and Defendant-Intervenor's motion for judgment on the agency record is denied.]

Dated: January 24, 2007

*Sidley Austin LLP*, (*Lawrence R. Walders*), *Daniel Bahar*, *Neil R. Ellis*, *Neil C. Pratt*, *Ruthanne M. Deutsch*, *Peter J. Toren*; *Law Offices of Hoken S. Seki*, *Hoken S. Seki* for Plaintiffs Tokyo Kikai Seisakusho, Ltd. and TKS (U.S.A.), Inc.

*Steptoe & Johnson LLP, Alexandra E. Baj, Daniel J. Calhoun, Richard O. Cunningham, Eric C. Emerson, (Gregory S. McCue)* for Plaintiff-Intervenor Mitsubishi Heavy Industries, Ltd.

*Stuart E. Schiffer*, Assistant Attorney General; *David M. Cohen*, Director; (*Patricia M. McCarthy*) Assistant Director; (*Kent G. Huntington*), Commercial Litigation Branch, Civil Division, United States Department of Justice; *Hardeep K. Josan*, Office of Chief Counsel for Import Administration, United States Department of Commerce for Defendant United States.

*Wiley Rein & Fielding LLP*, (*Charles O. Verrill, Jr.*), *Eileen P. Bradner*, (*John R. Shane*), *M. William Schisa* for Defendant-Intervenor Goss International Corporation.

## I. Introduction

This case consolidates various challenges to the Department of Commerce's ("Commerce" or "Department") antidumping ("AD") determination *Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan: Final Results of Changed Circumstances Review*, 71 Fed. Reg. 11,590-01 (Dep't Commerce Mar. 8, 2006) ("*Final Results*"). *See also Issues and Decision Memorandum for the Changed Circumstances Review of Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan*, A-588-837 (Dep't Commerce Mar. 8, 2006), http://ia.ita.doc.gov/frn/summary/Japan/E6-3295-1.pdf ("*I&D Memo.*"). Plaintiffs Tokyo Kikai Seisakusho, Ltd., and TKS (U.S.A.), Inc., (collectively "TKS" or "Plaintiffs") challenge 1) Commerce's authority to initiate and conduct the changed circumstances review that led to the *Final Results*, 2) the Department's determination to reinstate the AD order in question with respect to TKS for the period from September 1, 2000 through September 3, 2001, and 3) Commerce's determination to reopen for reconsideration the sunset review that resulted in the complete revocation of the AD order. Plaintiff-Intervenor Mitsubishi Heavy Industries, Ltd. ("MHI"), also contests the Department's determination to reopen for reconsideration the sunset

review. Lastly, Plaintiff/Defendant-Intervenor Goss International Corporation ("Goss") challenges Commerce's conclusion that the record compiled in the changed circumstances review supported a finding that TKS did not intentionally withhold information relevant to the 1998-1999 and 1999-2000 reviews, and the resulting determination not to apply adverse facts available ("AFA") in those reviews. For the reasons given below the *Final Results* are affirmed in part and overturned in part.

## II. Procedural History

On September 4, 1996, the Commerce Department issued an amended final determination and AD order on large newspaper printing presses ("LNPPs") from Japan, which covered TKS and MHI.[1] *Notice of Antidumping Duty Order and Amended Final Determination of Sales at Less Than Fair Value: Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan*, 61 Fed. Reg. 46,621-01 (Dep't Commerce Sept. 4, 1996). Over subsequent years, Commerce conducted three administrative reviews of TKS pursuant to 19 U.S.C. § 1675(a), covering the periods 1) from September 1, 1997 to August 31, 1998; 2) from September 1, 1998 to August 31, 1999; and 3) from September 1, 1999 to August 31, 2000. *See Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, from Japan: Initiation of Changed Circumstances Review*, 70 Fed. Reg. 24,514-01, 24,514 (Dep't Commerce May 10, 2005) ("*Changed Circumstances Review Initiation*"). TKS received a zero margin in each investigation, *see id.*, which led the Department, on January 16, 2002, to revoke the AD order with respect to TKS pursuant to 19 C.F.R. § 351.222(b)(2). *Large Newspaper Printing Presses and Components Thereof, Whether*

---

[1]Goss was the domestic petitioner in the proceeding.

*Assembled or Unassembled, from Japan: Final Results of Antidumping Duty Administrative*

*Review and Revocation in Part*, 67 Fed. Reg. 2190-01 (Dep't Commerce Jan. 16, 2002) ("*Partial*

*Revocation Determination*").  Barely over a month later, Commerce revoked the AD order

entirely during a five-year sunset review pursuant to 19 U.S.C. § 1675(c)(3)(A).[2]  *Large*

*Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled,*

*from Japan (A-588-837) and Germany (A-428-821):  Notice of Final Results of Five-Year Sunset*

*Reviews and Revocation of Antidumping Duty Orders*, 67 Fed. Reg. 8522-01 (Dep't Commerce

Feb. 25, 2002) ("*Full Revocation Determination*").[3]

After learning of information arising from a recent federal court decision that found TKS

provided false information to the government about their 1997-1998 sales,[4] the Department self-

initiated a changed circumstances review of the AD order[5] with respect to the firms pursuant to

---

[2]In relevant part, 19 U.S.C. § 1675(c)(3)(A) provides for the revocation of an AD order if no domestic manufacturer or producer of a product like that within the scope of the order responds to the notice of initiation of a five-year review.  *See* 19 U.S.C. § 1675(c)(3)(A); *see also id.* § 1677(9)(C)–(G) (defining "interested party" with respect to 19 U.S.C. § 1675(c)(3)(A)).

[3]Commerce merged the sunset reviews of LNPPs from Japan and Germany because each review's analysis turned on "the adequacy of the domestic interested party response . . . . [T]he domestic interested party [was] the same in both cases." *Large Newspaper Printing Presses and Components from Germany and Japan: Extension of Time Limit for Preliminary and Final Results of Five-Year Sunset Reviews*, 66 Fed. Reg. 58,713-01, 58,713 (Dep't Commerce Nov. 23, 2001); *see also* 19 U.S.C. § 1675(c)(3)(A).

[4]TKS and the Dallas Morning News engaged in a fraudulent price increase and secret rebate scheme that made the sale of LNPPs to the latter appear as if they were not dumped on the domestic market. *See Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, 321 F. Supp. 2d 1039, 1045 (N.D. Iowa 2004).  This one sale constituted the sole transaction covered in Commerce's 1997-1998 administrative review of TKS.

[5]Although Commerce proffers that it engaged in a review of the AD order in general, *see, e.g.*, Def. Mem. 4, a careful reading of the *Final Results* and *I&D Memo.* reveals that the agency in fact reconsidered the three administrative reviews of TKS and the resulting *Full Revocation*

19 U.S.C. § 1675(b)(1).  *Changed Circumstances Review Initiation*, 70 Fed. Reg. at 24,515;

*accord I&D Memo.* at 4–5; *see also Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, 321 F.

Supp. 2d 1039 (N.D. Iowa 2004), *aff'd sub nom. Goss Int'l Corp. v. Man Roland*

*Druckmaschinen Aktiengesellschaft*, 434 F.3d 1081 (8th Cir. 2006), *cert. denied sub nom. Tokyo*

*Kikai Seisakusho, Ltd. v. Goss Int'l Corp.*, 126 S. Ct. 2363 (2006).  In its preliminary results,

Commerce found that

> TKS granted [the Dallas Morning News] a $1 million rebate and credits for spare
> parts tied to the sale reviewed, yet it did not disclose this information in its
> questionnaire responses submitted in the 1997-1998 administrative review.  TKS
> was specifically asked in the questionnaire issued in the 1997-1998 administrative
> review whether it had granted any discounts or rebates in connection with the
> subject sale.  TKS unequivocally stated that "TKS did not provide any discounts
> to the contract price" and "TKS did not provide any rebates to the contract price."

*Large Newspaper Printing Presses and Components Thereof, Whether Assembled or*

*Unassembled, from Japan: Preliminary Results of Changed Circumstances Review*, 70 Fed. Reg.

54,019-01, 54,021 (Dep't Commerce Sept. 13, 2005) (citations omitted) ("*Preliminary Results*").

Consequently, Commerce preliminarily determined that TKS' actions warranted application of

an AFA rate of 59.67 percent in the 1997-1998 administrative review.  *See id.* at 54,022.  It also

decided that this change, which meant that TKS no longer enjoyed a rate of zero for three

consecutive administrative reviews, necessitated a recision of the revocation of the AD order

with respect to TKS.  *See id.* at 54,023; *see also Partial Revocation Determination*, 67 Fed. Reg.

2190-01.  This TKS-specific recision would reinstate the order with respect to TKS from

September 1, 2000 through September 3, 2001.  Finally, the Department determined that if the

---

*Determination.  See, e.g.*, *Final Results*, 71 Fed. Reg. at 11,590–92; *I&D Memo.* at 6–18.

*Preliminary Results* were affirmed, the agency would reconsider the sunset review that fully revoked the AD order.  *See Preliminary Results*, 70 Fed. Reg. at 54,023; *see also Full Revocation Determination*, 67 Fed. Reg. 8522-01.

On March 8, 2006, Commerce affirmed the *Preliminary Results* in their entirety.  *Final Results*, 71 Fed. Reg. at 11,590.  Plaintiffs then brought suit in this Court.

### III. Jurisdiction & Standard of Review

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c).  The court "must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'"  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)) (quotations omitted).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966)) (quotations omitted).  The court therefore "affirms Commerce's factual determinations so long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions."  *Olympia Indus., Inc. v. United States*, 22 CIT 387, 389, 7 F. Supp. 2d 997, 1000 (1998) (citing *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1563 (Fed. Cir. 1984)).  It may not "substitut[e] its judgment for that of

the agency." *Hangzhou Spring Washer Co. v. United States*, 29 CIT ___, ___, 387 F. Supp. 2d 1236, 1251 (2005) (citing *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994)).

When the court examines the lawfulness of Commerce's statutory interpretations and regulations, it must employ the two-step test established in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). *See Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1380 (Fed. Cir. 2001). First, the court must examine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc.*, 467 U.S. at 842. If it has, the agency and the court must comply with the clear intent of Congress, *see id.* at 842–43; if it has not, "the court must defer to [the Department's] construction of the statute so long as it is permissible." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000).

### III. Discussion

**A. The Department's Authority to Initiate & Conduct the Changed Circumstances Review**

TKS assert that the Commerce Department had neither the inherent nor statutory authority to initiate and conduct the changed circumstances review at issue. Mem. P. & A. Supp. Mot. Pls. TKS J. A.R. 8 ("Pls. Mem."). TKS contest the Department's claim to inherent authority to conduct changed circumstances reviews "to reconsider decisions that may have been based on false or misleading information." Pls. Mem. 18. They state that "[a] central tenet of administrative law is that an agency is limited to the exercise of powers that are expressly delegated" to it, since "an administrative agency 'is entirely a creature of Congress and the determinative question is not what [the agency] thinks it should do but what Congress has said it can do.'" Pls. Mem. 19 (quoting *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 322 (1961)) (second brackets in original). "'[A]n agency literally has no power to act . . . unless

and until Congress confers power upon it . . . .'" Pls. Mem. 19 (quoting *FAG Italia S.p.A. v. United States*, 291 F.3d 806, 816 (Fed. Cir. 2002) (citation omitted)) (first ellipses in original). Furthermore, even if Congress vested the Department with this inherent authority, "Commerce cannot exercise whatever inherent authority it may have in a manner that is contrary to the express language of the statute [19 U.S.C. § 1675(b)(1)]."[6] Pls. Mem. 21.

While their broad statements are indisputable, the court disagrees with Plaintiffs' restrictive interpretation of the agency's powers at issue here. Before proceeding, however, the court emphasizes that "[w]henever a question concerning administrative . . . reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching that [which], ultimately, appears to be the right result on the other." *Civil Aeronautics Bd.*, 367 U.S. at 321; *accord Macktal v. Sec'y of Labor*, 286 F.3d 822, 826 (5th Cir. 2002); *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995); *see Alta. Gas Chems., Ltd v. Celanese Corp.*, 650 F.2d 9, 13 (2d Cir. 1981); *see*

---

[6]19 U.S.C. § 1675(b)(1), which grants Commerce authority to conduct changed circumstances reviews, in relevant part states that:

   (1) In general
   Whenever the administering authority [Commerce] . . . receives information
    concerning . . .
   (A) a final affirmative determination that resulted in an antidumping duty order
    under this subtitle or a finding under the Antidumping Act, 1921, or in a
    countervailing duty order under this subtitle or section 1303 of this title,
   (B) a suspension agreement accepted under section 1671c or 1673c of this title, or
   (C) a final affirmative determination resulting from an investigation continued
    pursuant to section 1671c(g) or 1673c(g) of this title,

   which shows changed circumstances sufficient to warrant a review of such
   determination or agreement, the administering authority . . . shall conduct a
   review of the determination or agreement after publishing notice of the review in
   the Federal Register.
19 U.S.C. § 1675(b)(1).

*also ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 324 n.10 (1994). As explained below, the presence of fraud and its compounded effects upon Commerce's administrative reviews and the *Partial Revocation Determination* tilt the balance toward the latter.

As the Department insists, an agency may act "pursuant to its inherent authority" to protect the integrity of its proceedings from fraud. Def. Mem. 10; *accord Elkem Metals Co. v. United States*, 26 CIT 234, 240 & n.6, 193 F. Supp. 2d 1314, 1321 & n.6 (2002); *see* Def. Mem. 11–12; *cf. Macktal*, 286 F.3d at 825–26; *Alta. Gas Chems., Ltd.*, 650 F.2d at 13 ("It is a well established principle that an administrative agency may reconsider its own decisions. 'The power to reconsider is inherent in the power to decide.'") (quoting *United States v. Sioux Tribe*, 616 F.2d 485, 493 (Ct. Cl. 1980)) (quotations omitted); *Elkem Metals Co.*, 26 CIT at 239–41, 193 F. Supp. 2d at 1320–22; *Bookman v. United States*, 453 F.2d 1263, 1265 (Ct. Cl. 1972). In fact, "[i]t is hard to imagine a clearer case for exercising this inherent power than when a fraud has been perpetrated on the tribunal." *Alta. Gas Chems., Ltd.*, 650 F.2d at 13; *accord Elkem Metals Co.*, 26 CIT at 240, 193 F. Supp. 2d at 1321.

"False testimony in a formal proceeding is intolerable," and "[w]e must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary proceedings." *ABF Freight Sys., Inc.*, 510 U.S. at 323; *see Elkem Metals Co.*, 26 CIT at 240 n.6, 193 F. Supp. 2d at 1321 n.6. "In any proceeding, whether judicial or administrative, deliberate falsehoods," such as those TKS submitted to Commerce during the 1997-1998 administrative review, "well may affect the dearest concerns of the parties before a tribunal and may put the factfinder and parties to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross examination, by extraneous investigation or other collateral means." *ABF Freight Sys., Inc.*, 510

U.S. at 323 (internal citations & quotations omitted). By providing Commerce with fraudulent information in the 1997-1998 administrative review, TKS compromised the accuracy of the proceedings and frustrated the Department's ability to best effectuate Congress' policy goals. *See id.* at 323–24. Under such circumstances, Commerce has the inherent authority to self-initiate a review of its prior determinations to purge them of fraudulent data. *Accord Alta. Gas Chems., Ltd.*, 650 F.2d at 12–13 ("'The inherent power of a federal court to investigate whether a judgment was obtained by fraud, [sic] is beyond question,' *Universal Oil Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946), . . . . This universally accepted rule has been applied to proceedings before federal administrative agencies."); *see Greene County Planning Bd. v. Fed. Power Comm'n*, 559 F.2d 1227, 1233 (2d Cir. 1976); *see also Alta. Gas Chems., Ltd.*, 650 F.2d at 12 ("[T]he [agency] will certainly be in a far better position than the . . . court to determine whether it would have reached a different conclusion but for the [fraud]."); *cf. SEC v. Chenery Corp.*, 332 U.S. 194, 202–03 (1947) ("Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. . . . [P]roblems may arise . . . which the administrative agency could not reasonably foresee . . . . In those situations, the agency must retain power to deal with the problems on a case-to-case basis if the administrative process is to be effective."); *Elkem Metals Co.*, 26 CIT at 239, 193 F. Supp. 2d at 1320.

Given the severe fraud perpetrated by TKS during the 1997-1998 administrative review, as well as other incidents of fraud alleged by Goss in the two successive administrative reviews, Commerce acted lawfully when it initiated and conducted reviews of those determinations. *See Goss Int'l Corp.*, 321 F. Supp. 2d at 1045; *I&D Memo.* at 4–5. Likewise, the Department

reasonably initiated and conducted a review of its determination to revoke the AD order with respect to TKS since the basis of that decision rested upon the results of the tainted administrative reviews. *See* 19 C.F.R. § 351.222(b)(2); *Partial Revocation Determination*, 67 Fed. Reg. at 2191–92. Consequently, the court holds that Commerce possessed the authority to initiate and conduct these reviews.[7]

**B. Commerce's Determination to Reinstate the AD Order with Respect to TKS**

Plaintiffs also contest Commerce's decision to reinstate the AD order with respect to them from September 1, 2000 through September 3, 2001. They contend that "Commerce had no authority to reinstate the antidumping duty order . . . because there is no antidumping duty order on LNPPs from Japan. The order was revoked with respect to all Japanese producers and exporters on February 25, 2002." Pls. Mem. 15. TKS claim that the Department's regulations permit the agency to reinstate orders revoked with respect to a specific company "only 'as long as *any* exporter or producer is subject to the order.'" Pls. Mem. 15 (citing 19 C.F.R. § 351.222(b)(2)(i)(B)). Plaintiffs further contend that Commerce has recognized this policy in practice, citing the agency's statement in *Sebacic Acid from China*[8] that "'unless all exporters are revoked from the order, the order continues to exist, and thus the potential for reinstatement.'" Pls. Mem. 15–16 (quoting *Issues and Decisions Memorandum for the Changed Circumstances*

---

[7]Plaintiffs argue that the concise language of 19 U.S.C. § 1675(b)(1) does not grant Commerce the power to initiate changed circumstances reviews of administrative reviews and determinations to partially revoke AD orders. Because the court holds that the Department has the inherent authority to review the determinations in question due to fraud, the court need not reach this issue.

[8]*Sebacic Acid from the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review and Reinstatement of the Antidumping Duty Order*, 70 Fed. Reg. 16,218 (Dep't Commerce Mar. 30, 2005).

*Review and Reinstatement of the Antidumping Duty Order on Sebacic Acid from the People's*

*Republic of China*, A-570-825 (Dep't Commerce Mar. 23, 2005), at 8,

http://www.ia.ita.doc.gov/frn/summary/prc/E5-1401-1.pdf.  Therefore, according to TKS, once

the order no longer exists, neither does the "potential for reinstatement."

TKS' argument fails.  This interpretation of Commerce's regulations and past

determinations distorts their meaning and leads to absurd results.  Commerce rightly objects to

TKS' analysis when it notes that the Department "'regularly conducts reviews for a segment of

time in the past when [a given] order existed even if the order no longer exists at the time of

initiation of that review.'"  Def. Mem. 15 (quoting *I&D Memo.* at 7); *see, e.g., Antifriction*

*Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from France, Germany, Italy,*

*Japan, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative*

*Reviews and Revocation of Orders in Part*, 66 Fed. Reg. 36,551-01 (Dep't Commerce July 12,

2001).  Contrary to Plaintiffs' claims, Commerce acts in accordance with its regulations when it

performs such reviews.  19 C.F.R. § 351.222(b)(2)(i)[9] sets forth three criteria for the agency to

evaluate when determining whether to revoke an AD order partially:

> (A) Whether one or more exporters or producers covered by the order have sold
> the merchandise at not less than normal value for a period of at least three
> consecutive years;
> (B) Whether, for any exporter or producer that the Secretary previously has
> determined to have sold the subject merchandise at less than normal value, the
> exporter or producer agrees in writing to its immediate reinstatement in the order,
> *as long as any exporter or producer is subject to the order*, if the Secretary
> concludes that the exporter or producer, subsequent to the revocation, *sold* the
> subject merchandise at less than normal value; and

---

[9]Congress did not establish specific guidelines for the partial revocation of orders.  As the
court finds that Commerce's regulation permissibly effectuates Congress' intent, the court must
afford it *Chevron* deference.  *See Chevron, U.S.A., Inc.*, 467 U.S. at 842–43.

(C) Whether the continued application of the antidumping duty order is otherwise necessary to offset dumping.

19 C.F.R. § 351.222(b)(2)(i)(A)–(C) (emphasis added). From the regulation's text, it is clear that the clause "as long as any exporter or producer is subject to the order" refers to the period of time which a reinstated AD order may cover – not when Commerce may perform the reinstatement. *Id.* § 351.222(b)(2)(i)(B). This restriction serves to ensure that the Department cannot reinstate an order for an individual party covering a time period contemporaneous with a time period when the order was already fully revoked. It does not prohibit Commerce from reinstating a partially revoked order with respect to a party that fraudulently concealed its dumping simply because the Department discovered the fraud after the AD order no longer existed.

Once Commerce made the determination that TKS fraudulently manipulated their response to the Department's questionnaire and applied AFA to TKS' 1997-1998 administrative review dumping margin pursuant to 19 U.S.C. § 1677e(b), TKS lost their "three consecutive years" of zero-margin administrative reviews upon which Commerce based the *Partial Revocation Determination*. Consequently, the Department appropriately reinstated the AD order with respect to TKS pursuant to 19 C.F.R. § 351.222(b)(2)(i) from the period between September 1, 2000 and September 3, 2001. *See Jia Farn Mfg. Co. v. Sec'y of Commerce*, 17 CIT 187, 192, 817 F. Supp. 969, 973 (1993) ("[T]he exclusion of a firm from [an] order applies only when the firm acts in the same capacity as it was excluded from the order."); *I&D Memo.* at 6–7. September 1, 2000 marked the date that Commerce revoked the AD order with respect to TKS. *See Partial Revocation Determination*, 67 Fed. Reg. at 2192. September 3, 2001 was the final

day before the Department revoked the AD order in its entirety.  *See Full Revocation*

*Determination*, 67 Fed. Reg. at 8523.  The reinstatement of the AD order for TKS was supported

by substantial evidence and in accordance with law, and therefore is affirmed.

**C. Commerce's Determination to Reopen the Sunset Review for Reconsideration**

**1. Plaintiffs & Plaintiff-Intervenor's Contentions**

TKS and MHI challenge Commerce's determination in the *Final Results* to reconsider the

*Full Revocation Determination*.  First, they maintain that the Department has no authority to

conduct a sunset review on an already completely revoked order.  *See* Pls. Mem. 16–17; Br. MHI

Supp. R. 56.2 Mot. J. A.R. 22 ("Pl.-Int. Mem.").  According to TKS, 19 U.S.C. § 1675(c)(1)

establishes specific criteria under which a sunset review must occur:

> (1) In general
> Notwithstanding subsection (b) of this section [which concerns reviews based on changed circumstances] . . . , 5 years after the date of publication of--
> (A) . . . an antidumping duty order . . .
> the administering authority . . . shall conduct a review to determine, in accordance with section 1675a of this title, whether revocation of the . . . antidumping duty order . . . would be likely to lead to continuation or recurrence of dumping . . . .

19 U.S.C. § 1675(c)(1).  In particular, "[t]he statute obviously contemplates that an antidumping

duty order must be in effect if the Department is to determine the potential effect of revocation of

the order."  Pls. Mem. 17.  In this case, however, Commerce revoked the order more than four

years before it decided to initiate the changed circumstances review.  Therefore, according to

TKS, "to conduct the proposed sunset review the Department would have to 'create' the

antidumping order that is the legal predicate for the review.  There is no legal or factual basis for

the conduct of such a fictional exercise."  Pls. Mem. 17; *accord* Pl.-Int. Mem. 22–24, 30–31.

In addition, TKS and MHI believe that Commerce's attempt to conduct the sunset review stems from the agency's desire "to punish TKS for allegedly making false statements in the 1997-1998 administrative review." Pls. Mem. 17; *accord* Pl.-Int. Mem. 29. The parties highlight that antidumping laws serve a remedial purpose, so the Department cannot employ them in a punitive manner. *See* Pls. Mem. 17–18; Pl.-Int. Mem. 28–30. MHI specifically points to the Department's failure to reopen the sunset review with respect to the AD order on LNPPs from Germany despite the fact that Commerce revoked that order and the one on Japanese LNPPs for identical reasons in the same determination. *See* Pl.-Int. Mem. 30–31.

Furthermore, MHI claims that in Commerce's brief, the agency impermissibly justifies its decision to reconsider the sunset review by citing to the fraudulent information that TKS submitted to the Department during the 1997-1998 administrative review – a motive that conflicts with Commerce's previously stated reasoning 1) for fully revoking the AD order, *see Full Revocation Determination*, 67 Fed. Reg. at 8522–23, and 2) for deciding to reopen the sunset review. *See* Pl.-Int. Mem. 18–19 (citing *I&D Memo.* at 12–13, 14). In the *Full Revocation Determination*, the Department revoked the AD orders on LNPPs from Japan *and* Germany because there was no longer a domestic producer (Goss) to protect from material injury. *See Full Revocation Determination*, 67 Fed. Reg. at 8523. According to MHI, the discovery of TKS' fraudulent behavior in the 1997-1998 review therefore can have no bearing on the results of the *Full Revocation Determination*, even if Commerce could somehow demonstrate that Goss's withdrawal from the domestic market resulted from the Department's "erroneous preliminary determination revoking the order with respect to TKS." Pl.-Int. Mem. 10 (quoting *I&D Memo.* at 13); *see* Pl.-Int. Mem. 9–12, 15, 19–20. "Goss's withdrawal from the sunset

review was not a 'decision[] . . . [that] may have been based on false information,' but was instead an inevitable step by a bankrupt U.S. company that could not legally continue to participate in the sunset review." Pl.-Int. Mem. 16 (quoting *I&D Memo.* at 13) (brackets & ellipses in original); *see* Pl.-Int. Mem. 12–15 (listing comments by Goss demonstrating its departure from U.S. domestic market as LNPP producer). "[T]he Departments' [sic] basic rationale for reopening the settled sunset review – to give Goss the opportunity to decide whether or not to participate in the sunset review after TKS' fraud is identified and corrected – is entirely flawed, is based on no evidence whatsoever, and cannot be sustained." Pl.-Int. Mem. 16–17.

### 2. Defendant and Defendant-Intervenor's Contentions

The Commerce Department and Goss characterize TKS and MHI's challenges to the Department's determination to reopen the *Full Revocation Determination* for reconsideration as a premature attack on a non-final agency decision. "Essentially, TKS and MHI challenge future action that Commerce has indicated that it may undertake in a separate proceeding." Def. Mem. 21; *accord* Def. Mem. 23, 24 ("In essence, TKS and MHI both seek a permanent injunction that would bar Commerce from even reconsidering the sunset review and, in so doing, they are attempting to obtain an advisory opinion from this Court."). Moreover, Goss believes that TKS and MHI's argument that Commerce is employing the antidumping laws in a punitive manner is also unripe for decision, and therefore of no avail to their argument. The allegedly punitive nature of the reopening will not be known until completion of the review. *See* Resp. Br. Goss 27 ("Def.-Int. Br.").

### 3. Analysis

The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Tung Mung Dev. Co. v. United States*, 25 CIT 752, 792 (2001) (not reported in F. Supp.). According to the Supreme Court, a case is ripe for judicial action if it can fulfill the following two-part test: "First, the court must determine . . . whether there is a present case or controversy between the parties," and "[s]econd, . . . whether withholding judicial decision would work undue hardship on the parties." *Allegheny Ludlum Corp. v. United States*, 24 CIT 1424, 1448, 215 F. Supp. 2d 1322, 1344 (2000) (citing *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972)). The court finds that Plaintiffs' challenge fulfills these criteria.

The Department's decision to reopen the sunset review for reconsideration did not arise in a vacuum; the agency formally made this determination after extensive research and analysis, and affirmed it in the *Final Results*. *See Final Results*, 71 Fed. Reg. at 11,591–92; *I&D Memo.* at 14. In this manner, it is no different than other Commerce determinations at issue and qualifies as a final determination by the agency. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239–40 (discussing various agency actions qualifying as final). In fact, if TKS and MHI presently cannot seek judicial review of this aspect of the *Final Results*, they will have no other chance in the future. *See Ja Farn Mfg. Co.*, 17 CIT at 189, 817 F. Supp. at 971 ("[Commerce]'s decision to initiate the administrative review is not a preliminary decision which will be

superseded by a final determination, nor is it a decision related to methodology or procedure which may be reviewed by the court following the agency's final determination.") (quoting *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 584, 587, 717 F. Supp. 847, 850 (1989), *aff'd* 903 F.2d 1555 (Fed. Cir. 1990)) (quotations omitted) (brackets in original); *Techsnabexport, Ltd. v. United States*, 16 CIT 420, 424, 795 F. Supp. 428, 434 (1992) ("[J]urisdiction exists to hear challenges to the validity of antidumping proceedings prior to their completion if the opportunity for full relief may be lost by awaiting the final determination."); *cf. Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, Slip Op. 06-154 at 13 (CIT Oct. 18, 2006) (not reported in F. Supp.).[10] A challenge to this determination's validity therefore presents a live case or controversy between the parties. *See U.S. Ass'n of Imps. of Textiles & Apparel v. Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005); *see also Columbia Broad. Sys. v. United States*, 316 U.S. 407, 417–18 (1942) (holding that agency decision to promulgate contested regulation ripe for review even though agency has not enforced it because regulation formed definitive statement of agency position).

Likewise, TKS and MHI will face undue hardship if compelled to endure yet another round of administrative proceedings. Aside from devoting the time and resources to participate in the review, TKS and MHI will face significant, continuing commercial uncertainty with respect to their LNPP sales in the United States. *See Asociacion Colombiana de Exportadores de Flores*, 13 CIT at 586, 717 F. Supp. at 850 (recognizing party's desire to "be spared the considerable time, effort and money normally required of participants in [administrative]

_____

[10]The court grants Goss' motion for leave to file a response to TKS' November 22, 2006 letter, which concerns this case.

reviews" as legitimate burden). As discussed below, these hardships outweigh any benefit the Department or Goss could glean from an additional review. This issue is ripe for judicial review.

In the *Full Revocation Determination*, Commerce revoked the AD order on LNPPs from Japan and Germany, as law required, because "no domestic interested party responded to the notice of initiation" of that review. *Full Revocation Determination*, 67 Fed. Reg. at 8523; *see* 19 C.F.R. §§ 351.218(d)(1)(iii)(B), 351.222(i)(1). The Department now attempts to characterize this decision as tainted by fraud and therefore requiring reconsideration. *See, e.g.*, *Preliminary Results*, 70 Fed. Reg. at 54,019 ("[I]t is appropriate to take the following course of action in order to protect the integrity of the Department's proceedings: . . . (3) reconsider the revocation of the order under the sunset review provision . . . . If these preliminary results are confirmed in the final results, the Department will . . . initiate a new sunset review to reconsider the revocation of this order."); *I&D Memo.* at 12–13; *see also Final Results*, 71 Fed. Reg. 11,590-01 (affirming *Preliminary Results*).

As discussed earlier, agencies possess inherent authority to protect the integrity of their proceedings from fraud. However, even if reconsideration of the sunset review could demonstrate that TKS' misconduct in the 1997-1998 administrative review led Goss to withdraw from participation in the initial sunset review and thereby corrupted the *Full Revocation Determination*,[11] the Department could not alter the determination's ultimate results. First, as

---

[11]It is worth noting that the inquiry into whether Goss suffered material injury due to TKS' actions lies outside of Commerce's expertise, as the Department itself acknowledges. *See* 19 U.S.C. § 1673 (delegating to Commerce authority to discern presence of dumping and delegating to International Trade Commission ("ITC") authority to conduct injury determinations); *Co-Steel Raritan, Inc. v. ITC*, 357 F.3d 1294, 1297–98 (Fed. Cir. 2004); *Timken U.S. Corp. v. United States*, 28 CIT __, __, 310 F. Supp. 2d 1327, 1342 (2004); *see also* 19 C.F.R. § 351.218(a)–(b) (delegating to Commerce authority to determine if AD order revocation

manifest in the language of 19 U.S.C. § 1675(c)(1), which outlines sunset review procedures, a review cannot occur without an existing order. Commerce, though, fully revoked the order it hopes to review on September 4, 2001, and it lacks the power to resurrect a revoked order. *See Full Revocation Determination*, 67 Fed. Reg. at 8523.

> [T]he revocation determination of Commerce quashes the effect of an antidumping duty order . . . . Imposition of antidumping duties must have the support of two affirmative findings: a finding of dumping by Commerce and a separate finding by the ITC that this dumping materially injures the domestic industry. . . . It is an impermissible proposition that Commerce will impose antidumping duties based on a finding of dumping alone, without the requisite additional injury finding by the ITC.

*Asahi Chem. Indus. Co. v. United States*, 13 CIT 987, 990, 727 F. Supp. 625, 627 (1989); *accord* 19 U.S.C. § 1673; *I&D Memo.* at 7–8 ("[T]he Department by itself cannot order a continuation of an antidumping order without an affirmative injury finding by the ITC."). Furthermore, irrespective of whether TKS' egregious behavior forced Goss to quit the domestic market, the fact remains that there no longer exists a domestic producer of LNPPs. In the absence of a domestic producer during a sunset review, statute and regulations require Commerce to revoke the outstanding AD order. *See* 19 U.S.C. § 1675(c)(1) & (d)(1)–(2); 19 C.F.R. §§ 351.218(d)(1)(iii)(B) ("If no domestic interested party files a notice of intent to participate in the sunset review, the Secretary will . . . (3) . . . issue a final determination revoking the order . . . .") & (e)(1)(i)(C), 351.222(i)(1) ("In the case of a sunset review . . . , the Secretary will revoke an order . . . : (i) . . . where no domestic interested party files a Notice of Intent to

---

would lead to reoccurrence of dumping and delegating to ITC authority to determine if revocation would again lead to material injury); *I&D Memo.* at 7–8. *But see I&D Memo.* at 14 (declaring that reconsideration of sunset review will allow Commerce to analyze nature of material injury that Goss suffered).

Participate in the sunset review . . . , or where the Secretary determines . . . that domestic interested parties have provided inadequate response to the Notice of Initiation . . . ."); *see also Trs. in Bankr. of N. Am. Rubber Thread Co.*, Slip Op. 6-154 at 11 n.8.  Finally, punitive action has already been taken with regard to TKS by virtue of the judgment against them in *Goss Int'l Corp.* in excess of $35 million.  No such action is warranted with respect to the other respondent.  Although the court does not condone TKS' fraudulent misrepresentations in the 1997-1998 review, Congress wrote the sunset review statute in such a way that it precludes the action the Department of Commerce proposes, and therefore Commerce's decision to reconsider the sunset review cannot be sustained by the court.

**D. Commerce's Determination Not to Apply Adverse Facts Available to TKS' 1998-1999 & 1999-2000 Administrative Reviews**

In its separate motion for judgment on the agency record, Goss challenges Commerce's determination

> that Tokyo Kikai Seisakusho, Ltd. did not intentionally withhold and/or misrepresent information in the 1998-1999 and 1999-2000 administrative reviews of the antidumping order on large newspaper printing presses from Japan, and [Commerce's] subsequent failure to apply adverse facts available to Tokyo Kikai Seiskakusho [sic], Ltd. for those review periods.

Goss's R. 56.2 Mot. J. A.R. 1 ("Goss J. A.R.").  Goss asserts that TKS' fraudulent behavior in the 1997-1998 administrative review continued into the following two review periods and that by withholding information, TKS obstructed the compilation of a full and complete administrative record.  *See* Goss J. A.R. 4, 5–10 (listing alleged withholdings by TKS of information that Commerce requested and criticizing Commerce's discussion of why alleged withholdings did not warrant application of AFA), 12–15 (same), 20–26 (same).  Consequently, Goss maintains that

Commerce should have adhered to its supposed "prior practice" and used AFA in the latter two reviews. Goss J. A.R. 4; *see* Goss J. A.R. 17–20 (citing *Fresh Crawfish Tail Meat from the People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review*, 68 Fed. Reg. 19,504-01 (Dep't Commerce Apr. 21, 2003) ("*Crawfish*"); *Heavy Forged Hand Tools from the People's Republic of China; Final Results and Partial Rescission of Antidumping Duty Administrative Review and Determination Not to Revoke in Part*, 66 Fed. Reg. 48,026-01 (Dep't Commerce Sept. 17, 2001) ("*Heavy Forged Hand Tools*"); *Certain Cased Pencils from the People's Republic of China; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 66 Fed. Reg. 37,638-02 (Dep't Commerce July 19, 2001)). In essence, Goss believes that the only valid test to determine whether the Department should apply AFA to TKS is whether TKS "act[ed] to the best of its ability to comply with the Department's requests" and that TKS fails this test. Goss J. A.R. 10 (quotations & footnote omitted).

Goss misunderstands the laws governing Commerce's application of AFA and the ample discretion these laws grant to the agency. "Neither the statute[ governing the application of AFA, 19 U.S.C. § 1677e,][12] nor its legislative history obligates [Commerce] to make adverse inferences . . . . [T]he [agency] is given the discretion to make such inferences. Furthermore, [Commerce]

---

[12]Commerce may apply AFA pursuant to 19 U.S.C. § 1677e(b), which in relevant part states that

> (b) Adverse inferences
> If the administering authority . . . finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority . . . , the administering authority . . . , *may* use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available.
> . . . .

19 U.S.C. § 1677e(b) (emphasis added).

is not required to make identical determinations in every review . . . , but rather must consider . . . the circumstances of each investigations as *sui generis*." *Timken U.S. Corp. v. United States*, 28 CIT __, __, 310 F. Supp. 2d 1294, 1346 (2004); *accord Elkem Metals Co.*, 27 CIT 838, 851, 276 F. Supp. 2d 1296, 1308 (2003) (holding that agency has "discretion in deciding whether or not to draw an adverse inference with respect to injury based upon a party's failure to participate in the administrative proceeding" and that "the decision in either event must be based upon a sound rationale") (citations & quotations omitted); *Allegheny Ludlum Corp.*, 24 CIT at 1447, 215 F. Supp. 2d at 1343 (underscoring Commerce's "particularly great" discretion when applying AFA) (quotations & citation omitted).

> In the present case, Commerce correctly maintains that it
>
> has the inherent authority to reconsider past decisions when "after-discovered fraud" is presented to it. This does not mean, however, that disputes between parties relating to the interpretation to subjective issues, such as the date of sale, rise to the level of "after-discovered fraud." Nor does it mean that, because TKS purposefully misled Commerce during the 1997-1998 administrative review, that a presumption of intentional misconduct applies to other Commerce reviews.

Def. Mem. 25. Rather,

> [t]he deficient response must be analyzed in light of the respondent's overall conduct, the importance of the information, the particular time pressures of the investigation, and any other information that bears on the issue of whether the deficiency was an excusable inadvertence or a demonstration of a lack of regard for its responsibilities in the investigation.

*Allegheny Ludlum Corp.*, 24 CIT at 1445, 215 F. Supp. 2d at 1341.

In its analysis of the information provided, the Department "determined that there existed no clear and convincing evidence that TKS intentionally provided false and misleading information during the 1998-1999 and 1999-2000 administrative reviews to a level[] which

warranted recalculation of the margins."[13]  Def. Mem. 26; *accord I&D Memo.* at 15–16; *see AK Steel Corp. v. United States*, 28 CIT __, __, 346 F. Supp. 2d 1348, 1354–56 (2004) (affirming Commerce's decision not to apply AFA to party because party provided reasonable explanations for inability to produce all requested information); *see also Timken U.S. Corp.*, 310 F. Supp. 2d at 1340 ("Regardless of whether each piece of specific evidence is discussed, [Commerce] is presumed to have considered all the evidence in the record.") (quotations & citation omitted); *Elkem Metals Co.*, 27 CIT at 859, 276 F. Supp. 2d at 1315 (holding that agency cannot apply AFA to investigation periods when obstructionist behavior by party did not occur).  Though Commerce often applies AFA to parties who do not cooperate fully with its investigations, *see, e.g.*, *Crawfish*, 68 Fed. Reg. at 19,505–08; *Heavy Forged Hand Tools*, 66 Fed. Reg. at 48,027–29, in this case the Department has presented reasonable, substantiated explanations as to why it did not treat TKS' submission deficiencies in the 1998-1999 and 1999-2000 administrative reviews as fraudulent and therefore did not apply AFA to the reconsidered determinations.  *See generally I&D Memo.* at 16–18.  Goss's challenge to Commerce's determination amounts to a demand that the court re-weigh the significance of the evidence that appeared before the Department during the administrative proceedings, and this the court cannot do.  *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1355–58 (Fed. Cir. 2006).  Consequently, Commerce's determinations not to employ AFA in the 1998-1999 and 1999-2000 administrative reviews are affirmed.

---

[13]By contrast, when Commerce reconsidered the 1997-1998 administrative review and decided to apply AFA, it "found clear and compelling evidence on the record of this changed circumstances review that TKS intentionally provided false and incomplete information."  Def. Mem. 26 (quoting *I&D Memo.* at 16).

## IV. Conclusion

For the aforementioned reasons, TKS' motion for judgment on the agency record is granted in part and denied in part; MHI's motion for judgment on the agency record is granted; and Goss's motion for judgment on the agency record is denied. Correspondingly, the court affirms the Department of Commerce's ability to initiate and conduct the changed circumstances reviews for the 1997-1998, 1998-1999, and 1999-2000 administrative reviews and the *Partial Revocation Determination*. Commerce's decision to rescind the revocation of the antidumping order with respect to TKS from September 1, 2000 through September 3, 2001 is also affirmed. However, the court finds the Department's determination to reopen for reconsideration the *Full Revocation Determination* contravenes the statute and is therefore not in accordance with law. Finally, Commerce's determination not to apply adverse facts available to the 1998-1999 and 1999-2000 administrative reviews is affirmed.

January 24, 2007                                               /s/ Judith M. Barzilay

Dated:_____                    _____
          New York, NY                                                       Judge

_____ :
                                   :
TOKYO KIKAI SEISAKUSHO, LTD., and :
TKS (U.S.A.), Inc.,                  :
                                   :
           Plaintiffs,            :
                                   :
     and                       :
                                   :
MITSUBISHI HEAVY INDUSTRIES, :
LTD.,                           :
                                   :   Before: Judith M. Barzilay, Judge
          Plaintiff-Intervenor,    :   Consol. Court No. 06-00078
                                   :
     v.                        :
                                   :
UNITED STATES,             :
                                   :
          Defendant,         :
                                   :
     and                       :
                                   :
GOSS INTERNATIONAL :
CORPORATION,             :
                                   :
          Defendant-Intervenor.   :
_____ :

**JUDGMENT**

This case having been duly submitted for decision, and the court, reading all briefs submitted and after due deliberation, having rendered decisions herein;

Now, in conformity with those decisions, it is hereby

ORDERED that Plaintiffs' motion for judgment on the agency record challenging the Department of Commerce's ability to initiate and conduct changed circumstances reviews for the 1997-1998, 1998-1999, and 1999-2000 administrative reviews and the Partial Revocation

Determination is hereby DENIED. The court affirms these actions taken by the Department of Commerce; it is further

ORDERED that Plaintiffs' and Plaintiff-Intervenor's motions challenging the Department of Commerce's determination to reopen for reconsideration the Full Revocation Determination (sunset review) is hereby GRANTED. The court overrules the Department of Commerce's decision and ORDERS it to discontinue any action in regard to a reconsideration of the Full Revocation of the antidumping order revoked on February 25, 2002; and it is further

ORDERED that Defendant-Intervenor's motion challenging the Department of Commerce's decision not to use adverse facts available with respect to Plaintiffs during the 1998-1999 and 1999-2000 administrative reviews is DENIED.


January 24, 2007                                        /s/ Judith M. Barzilay
Dated:_____          _____
New York, NY                                              Judith M. Barzilay, Judge