# United States Court of Appeals for the Federal Circuit

---

**AMIR HEKMATI,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-2086

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-01766-RAH, Judge Richard A. Hertling.

---

Decided: October 13, 2022

---

EMILY GRIM, Gilbert LLP, Washington, DC, argued for plaintiff-appellant. Also represented by SCOTT DAVID GILBERT, BRANDON LEVEY, MARK A. PACKMAN.

SHARI A. ROSE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR, PATRICIA M. MCCARTHY, MEEN GEU OH.

---

Before LOURIE, BRYSON, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

The special master of the United States Victims of State Sponsored Terrorism Fund awarded money to Amir Hekmati. Later, the special master reconsidered his decision and rejected Mr. Hekmati's application to the Fund. Mr. Hekmati now appeals the United States Court of Federal Claims' decision that it lacks subject-matter jurisdiction over Mr. Hekmati's claim seeking payment of the money that the special master initially awarded him. *See Hekmati v. United States*, 153 Fed. Cl. 800 (2021). We conclude that 34 U.S.C. § 20144 precludes judicial review of the special master's reconsideration decision. Accordingly, we affirm.

## I. BACKGROUND

Mr. Hekmati is a United States Marine Corps veteran who completed two tours of service in Iraq between 2001 and 2005. J.A. 86. He also worked as a military contractor between 2005 and 2011. *Id.* The last of Mr. Hekmati's jobs as a contractor led to him being stationed in Afghanistan. J.A. 87–88. On his way back to the United States, Mr. Hekmati made a trip to Iran, where, he claims, he intended to visit family. J.A. 90, 96.

Then, on August 29, 2011, the Iranian government arrested Mr. Hekmati. J.A. 90. For the next four years, the Iranian government detained Mr. Hekmati and tortured him. J.A. 90–92. Finally, in 2016, the United States secured Mr. Hekmati's release in a prisoner exchange. J.A. 94.

After returning to the United States, Mr. Hekmati sued the Iranian government in the U.S. District Court for the District of Columbia, alleging that his detention and treatment constituted hostage-taking and torture under the Foreign Sovereign Immunities Act. J.A. 95. The district court entered a default judgment in Mr. Hekmati's favor the following year and awarded him about $63.5

million. J.A. 96. Mr. Hekmati then applied for compensation from the Fund. J.A. 99. Established by the Justice for United States Victims of State Sponsored Terrorism Act (the "Act"), 34 U.S.C. § 20144, the Fund provides money to citizens to whom a United States district court has awarded monetary damages against a foreign state that was a designated state sponsor of terrorism. *Id.* § 20144(c)(2)(A)(i). On December 13, 2018, the special master of the Fund, Kenneth Feinberg, informed Mr. Hekmati that he had "reviewed and approved" Mr. Hekmati's claim. J.A. 53.

Months passed. Mr. Hekmati received no money. J.A. 173. In October 2019, the Fund's interim special master, Deborah Connor, sent Mr. Hekmati a letter stating that the Department of Justice intended to seek reconsideration of the Fund's approval of his claim. J.A. 175. Mr. Hekmati promptly sued the United States in the Court of Federal Claims to secure payment of the money the special master had awarded him. J.A. 31, 47–48.

Nevertheless, on January 15, 2020, Mr. Feinberg—whom the Department of Justice retained again to review Mr. Hekmati's case, J.A. 175—sent Mr. Hekmati a letter stating that he had "determined that Mr. Hekmati [was] not eligible for compensation from the USVSST Fund," J.A. 177. Specifically, Mr. Feinberg concluded that "Mr. Hekmati's application and accompanying documents contained material omissions and false statements," contrary to Fund procedures. *Id.* Mr. Hekmati had claimed that "the primary purpose of his trip to Iran was to visit family for personal reasons." *Id.* But Mr. Feinberg determined that the primary purpose of Mr. Hekmati's trip was different—it was "to sell classified U.S. national security information to the government in Iran." *Id.*

Mr. Hekmati proceeded to request a hearing before Mr. Feinberg under 34 U.S.C. § 20144(b)(4). J.A. 198. After the hearing, Mr. Feinberg affirmed his reconsideration

decision. J.A. 197–98. He also specified some of the evidence that led him to conclude that Mr. Hekmati intended to sell classified national security information, including an FBI forensic analysis of Mr. Hekmati's "computer/search access logs" while working as a contractor in Afghanistan, his "evasive, false and inconsistent statements" in FBI interviews, and the assertions of "four different, independent and reliable sources" that Mr. Hekmati traveled to Iran primarily for reasons unrelated to visiting his family. J.A. 199.

Mr. Hekmati then filed an amended complaint with the Court of Federal Claims, asserting that the "'reconsideration' and subsequent recission of Mr. Hekmati's final award determination violate the terms of the USVSST Act." J.A. 81, 109. The Government moved to dismiss Mr. Hekmati's complaint for lack of subject-matter jurisdiction. *Hekmati*, 153 Fed. Cl. at 802; J.A. 1533. The court granted the motion, concluding that the Act, by providing its own "detailed remedial scheme" where claimants can request a hearing before the special master under § 20144(b)(4), prevented Mr. Hekmati from invoking Court of Federal Claims jurisdiction under the Tucker Act, 28 U.S.C. § 1491. *Hekmati*, 153 Fed. Cl. at 802, 810. Alternatively, the court reasoned that Mr. Hekmati's claim required the court to review the special master's reconsideration decision, which the Act precluded. *Id.* at 812. And even if Mr. Hekmati's claim were framed as a permissible challenge to the Fund's administration, the court concluded that it lacked jurisdiction under the Tucker Act as to non-monetary relief without there being a related claim for damages over which it did have jurisdiction. *Id.* at 811, 813–14.

Mr. Hekmati appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

The Court of Federal Claims provided several reasons for why it lacked subject-matter jurisdiction over Mr.

Hekmati's claim. Mr. Hekmati now contests each of those reasons. We address whether the Act precludes judicial review of Mr. Hekmati's claim and conclude that it does. Accordingly, we end our analysis there.

We review a dismissal for lack of subject-matter jurisdiction de novo. *Taylor v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020). There is a "'strong presumption' in favor of judicial review that we apply when we interpret statutes, including statutes that may limit or preclude review." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)). This presumption "may be overcome by 'clear and convincing' indications, drawn from 'specific language,' 'specific legislative history,' and 'inferences of intent drawn from the statutory scheme as a whole,' that Congress intended to bar review." *Id.* (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349–50 (1984)).

The Act includes specific language that Congress intended to bar judicial review of certain claims. Namely, the Act provides that all "decisions made by the Special Master with regard to compensation from the Fund" are "final" and "not subject to . . . judicial review."[1] 34 U.S.C. § 20144(b)(3)(B). Therefore, we must determine whether Mr. Hekmati's claim requires the Court of Federal Claims to review a "decision[] made by the Special Master with regard to compensation from the Fund."

---

[1] Section 20144(b)(3)(B)'s bar on "administrative or judicial review" is subject to an exception under § 20144(b)(4), which provides that a "claimant whose claim is denied in whole or in part by the Special Master may request a hearing before the Special Master." 34 U.S.C. § 20144(b)(4). Mr. Hekmati requested and received such an administrative hearing, J.A. 197–99, and so this exception is not relevant to the issue of whether the Court of Federal Claims has subject-matter jurisdiction.

We reject Mr. Hekmati's arguments. Mr. Hekmati seeks review of the special master's reconsideration decision. Mr. Hekmati argues that he does not seek review of the reconsideration decision because he is attempting "merely to enforce the USVSST Act." Appellant's Br. 24. Therefore, he argues that he is merely raising a "programmatic challenge[]" to the Fund's administration. Appellant's Br. 31–32. But Mr. Hekmati's operative complaint alleges that the "'reconsideration' and subsequent recission of Mr. Hekmati's final award determination violate the terms of the USVSST Act." J.A. 109. This allegation is, of course, necessary; if the reconsideration decision denying Mr. Hekmati's claim is valid, then there is no award to Mr. Hekmati for the Court of Federal Claims to enforce. For Mr. Hekmati to succeed, the court must review whether Mr. Feinberg's reconsideration decision complies with the Act.

Mr. Feinberg's reconsideration decision constitutes a "decision[] made by the Special Master with regard to compensation from the Fund." 34 U.S.C. § 20144(b)(3). Mr. Hekmati argues that the special master lacked authority to issue a reconsideration decision in the first place, meaning that it is procedurally invalid. Appellant's Br. 33. The Act does not expressly provide a procedure by which the special master can reconsider decisions. *See* 34 U.S.C. § 20144. But courts "have uniformly concluded that administrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) (collecting citations). For example, in *Tokyo Kikai*, we affirmed the Department of Commerce's inherent authority to reopen and reconsider a yearly administrative review of an antidumping order. *Id.* at 1359–62. And in *GTNX, Inc. v. INTTRA, Inc.*, we held that the Patent Trial and Appeal Board has the inherent authority to reconsider its decisions to

institute *inter partes* review.  789 F.3d 1309, 1312–13 (Fed. Cir. 2015).

Nevertheless, there are three limits on this authority pertinent to this case.[2]  First, an agency cannot "exercise its inherent authority in a manner that is contrary to a statute."  *Tokyo Kikai*, 529 F.3d at 1361; *see Bookman v. United States*, 453 F.2d 1263, 1265 (Ct. Cl. 1972) (noting that courts "will sustain the reconsidered decision of an agency" "absent contrary legislative intent or other affirmative evidence").  Second, where a statute "expressly provide[s] for reconsideration of decisions, the agency is obligated to follow the procedures for reconsideration set forth in the statute."  *Tokyo Kikai*, 529 F.3d at 1361; *Civ. Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 329 (1961) (holding that if the agency wishes to reconsider its decision, "it must proceed in the manner authorized by statute").  And third, the agency must "give notice to the parties of its intent to reconsider, and such reconsideration must occur within a reasonable time."  *Tokyo Kikai*, 529 F.3d at 1361.

---

[2]    *Tokyo Kikai* also provides that "an agency may not reconsider in a manner that would be arbitrary, capricious, or an abuse of discretion."  529 F.3d at 1361.  This exception is not applicable here.  To determine whether Mr. Feinberg's reconsideration was arbitrary, capricious, or an abuse of discretion, we would need to reach the merits of Mr. Feinberg's reconsideration decision.  We cannot engage in such an analysis of the merits, however, because we are considering whether the Court of Federal Claims has subject-matter jurisdiction, an issue that must be resolved before reaching the merits.  *See Martin v. Sec'y of Health & Hum. Servs.*, 62 F.3d 1403, 1407 (Fed. Cir. 1995) (holding that a court must first "establish that there is jurisdiction" and "[o]nly then may it adjudicate the merits of the claim").

No limit applies here.  No provision expressly bars the special master's reconsideration decision.  *See* 34 U.S.C. § 20144.  The Act does state that all "decisions made by the Special Master with regard to compensation from the Fund" are "final and . . . not subject to administrative or judicial review."  34 U.S.C. § 20144(b)(3)(B).  But we have held that an agency can reconsider a decision even if a statute provides that such a decision is "final." *Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1385–86 (Fed. Cir. 2016) (citing *GTNX*, 789 F.3d at 1312–13).  In *Medtronic*, we addressed 35 U.S.C. § 314(d), which provides that a decision to institute *inter partes* review "shall be final and nonappealable."  839 F.3d at 1383.  We held that the Board can reconsider institution decisions despite § 314(d) because the language of that provision "is not limited to an *initial* determination." *Medtronic*, 839 F.3d at 1386 (quoting *GTNX*, 789 F.3d at 1312).  Similarly, 34 U.S.C. § 20144(b)(3)(B) is not limited to an initial decision, and so it does not bar reconsideration.

Nor could Mr. Feinberg have run afoul of the second limit.  The Act does not expressly provide a procedure for the special master to reconsider his decisions.  *See* 34 U.S.C. § 20144.  Thus, the Act could not obligate Mr. Feinberg to proceed differently with his reconsideration.  *See Tokyo Kikai*, 529 F.3d at 1361 (holding similarly).

At oral argument, Mr. Hekmati focused on the third limit.  *See* Oral Arg. at 04:35–13:02, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2086_02082022.mp3.  He did not contend that he lacked notice of the reconsideration.  Indeed, Ms. Connor informed Mr. Hekmati on October 24, 2019, that Mr. Feinberg would reconsider his earlier decision.  J.A. 175.  Rather, Mr. Hekmati argued that reconsideration did not occur within a reasonable time.  *See* Oral Arg. at 04:35–13:02.  We disagree.

Our predecessor court noted that a "reasonable time period will vary with each case, but absent unusual circumstances, the time period would be measured in weeks, not years." *Gratehouse v. United States*, 512 F.2d 1104, 1109 (Ct. Cl. 1975); *see* Oral Arg. at 08:05–08:18 (Mr. Hekmati arguing that reconsideration is only reasonable if it occurs within weeks of the initial decision). But this case is one of those unusual circumstances because Mr. Feinberg "consider[ed] new evidence that [Fund] proceedings were tainted by fraud."[3] *See Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1377 (Fed. Cir. 2011). We have held that an "agency's power to reconsider is even more fundamental when, as here, it is exercised to protect the integrity of its own proceedings from fraud." *Tokyo Kikai*, 529 F.3d at 1361 (citing *Alberta Gas Chems., Ltd. v. Celanese Corp.*, 650 F.2d 9, 12 (2d Cir. 1981)). This conclusion reflects the Supreme Court's holding that when a question of administrative reconsideration emerges, "two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching [w]hat, ultimately, appears to be the right result on the other." *Civ. Aeronautics Bd.*, 367 U.S. at 321. Fraud implicates the public interest in reaching the right result.

At oral argument, Mr. Hekmati argued that *Tokyo Kikai* shows that reconsideration must occur within a reasonable time even if there was a discovery of fraud. Oral Arg. at 06:56–07:36. Indeed, the Fund must issue its reconsideration decision "within a reasonable time after

---

[3]    While we cannot determine whether Mr. Feinberg was correct in determining that Mr. Hekmati's Fund application "contained material omissions and false statements," J.A. 177, Mr. Feinberg exercised his authority to reconsider his earlier decision "to protect the integrity of [the Fund's] proceedings from fraud," *Tokyo Kikai*, 529 F.3d at 1361.

learning of information indicating that the decision may have been tainted by fraud." *Tokyo Kikai*, 529 F.3d at 1361–62. But the timing of the Fund's reconsideration here is analogous to that of the Department of Commerce in *Tokyo Kikai*. In that case, we concluded that it was reasonable for Commerce to issue its reconsideration order in March 2006—ten months after May 2005, the latest time when Commerce could have learned of the relevant fraud. *Id.* at 1357, 1361–62.

Here, the record does not show exactly when the Fund learned of the Department of Justice's concerns that Mr. Hekmati provided false information in his application. Mr. Hekmati suggests that the Fund must have learned of the Department of Justice's concerns in January 2019 because that is when the Fund distributed payments to all claimants besides Mr. Hekmati. Oral Arg. at 08:41–08:50; *see also* Appellant's Br. 12 & n.36 (citing Kenneth R. Feinberg, Report Regarding Second Distribution 10 (Feb. 2019), http://www.usvsst.com/docs/Congressional_Report.pdf). But even if we accept Mr. Hekmati's argument that the Fund learned of the relevant information in January 2019, the special master would have issued his reconsideration decision twelve months later in January 2020. J.A. 177. This time period is only a few months longer than Commerce took in *Tokyo Kikai*. And the Fund had additional hurdles to face: the Department of Justice and the Fund had to navigate how the Department of Justice's evidence would be declassified so that the special master and Mr. Hekmati could review it. Oral Arg. at 18:00–18:30. Because of our decision in *Tokyo Kikai* and the unique challenges presented in this case in navigating classified evidence, we hold that the special master issued his reconsideration decision within a reasonable time. Thus, the reconsideration decision was a valid exercise of the Fund's inherent authority to reconsider its decisions.

Because the special master's reconsideration decision is a valid "decision[] made by the Special Master with

regard to compensation from the Fund," § 20144(b)(3)(B) precludes judicial review of that decision.[4] The Court of Federal Claims therefore does not have subject-matter jurisdiction over Mr. Hekmati's claim. Accordingly, we need not reach Mr. Hekmati's other arguments.

\* \* \*

We do not have the evidence that led Mr. Feinberg to conclude that Mr. Hekmati attempted to sell classified national security information to the Iranian government. Nor do we attempt to discern whether Mr. Feinberg correctly reached that determination. All we conclude is that the Court of Federal Claims cannot review the special master's decision because Congress did not give it jurisdiction to do so under 34 U.S.C. § 20144.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

**AFFIRMED**

COSTS

No costs.

---

[4] We need not decide whether the Act precludes any review of a decision of the special master to reconsider, regardless of the circumstances. All we hold is that the special master did not lack authority to reconsider in this case and that the Act precludes review of the merits of the special master's reconsideration decision.