# United States Court of Appeals for the Federal Circuit

---

**SYNEREN TECHNOLOGIES CORP., EKAGRA PARTNERS, LLC, JCS SOLUTIONS LLC, THE PROSPECTIVE GROUP, INC.,**
*Plaintiffs*

**CAN SOFTTECH, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**RIVA SOLUTIONS, INC., BRIGHTPOINT, LLC, PROGOV PARTNERS LLC, ITC-DE, LLC, DBA DOTIT, KONIAG MANAGEMENT SOLUTION, LLC, HALVIK CORP., T AND T CONSULTING SERVICES, INC.,**
*Defendants*

---

2024-1424

---

Appeal from the United States Court of Federal Claims in Nos. 1:23-cv-01112-EHM, 1:23-cv-01115-EHM, 1:23-cv-01125-EHM, 1:23-cv-01132-EHM, 1:23-cv-01139-EHM, Judge Edward H. Meyers.

---

Decided: February 5, 2026

---

2                                  SYNEREN TECHNOLOGIES CORP. v. US

ALEXANDER B. GINSBERG, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, DC, argued for plaintiff-appellant. Also represented by KATHERINE ST. ROMAIN; ROGER V. ABBOTT, STEPHEN PHILIP RAMALEY, Miles & Stockbridge, P.C.

YARIV S. PIERCE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by PATRICIA M. MCCARTHY, BRETT SHUMATE; FRANKLIN E. WHITE, JR.

———————————

Before CHEN, LINN, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

CAN Softtech, Inc. appeals the decision of the United States Court of Federal Claims that denied its bid protest of awards for Information Technology services for the United States Department of Commerce. Because the agency was permitted to take unilateral corrective action in a bid protest by canceling the awards and issuing new awards, we affirm.

I

On November 12, 2021, the United States Department of Commerce issued Request for Proposal No. 1331L5-21-R-13OS-0006, which sought proposals to provide enterprise-wide Information Technology (IT) services to the agency. The agency specifically sought proposals from qualified businesses to provide these services across six main task areas. It evaluated 81 proposals and generated Technical, Past Performance, and Price evaluation reports for the Source Selection Authority (SSA) to review. On September 9, 2022, the SSA signed a Source Selection Decision Document that consolidated these three reports, assessed the offer provided by each offeror, and conducted a tradeoff analysis. Based on this analysis, on September 12, 2022,

the SSA announced the names of 15 presumptive contract awardees.

Unsuccessful offerors, including CAN Softtech, Inc. (CSI), filed protests in the United States Court of Federal Claims challenging the awards. On May 3, 2023, the trial court held that some of the offers, including the one submitted by CSI, were evaluated arbitrarily and capriciously. *Allicent Tech., LLC v. United States*, 166 Fed. Cl. 77, 99, 188–89 (2023), *as amended* (July 18, 2023), *reconsideration denied*, No. 22-1380C, 2023 WL 4287196 (Fed. Cl. June 30, 2023). Accordingly, the trial court permanently enjoined the agency from proceeding with performance of the fifteen awarded contracts unless it reevaluated the proposals of CSI and other plaintiffs and issued a new decision not inconsistent with the court's opinion.

On June 29, 2023, the agency executed contract modifications that terminated the awards made to the 15 awardees for convenience. At the same time, the technical evaluation team (TET) signed a second amendment to its report indicating that it had reevaluated the technical offers. The SSA approved the reevaluation and signed a second amended Source Selection Decision Document. The SSA then awarded contracts to the 15 original awardees.

On July 18, 2023, Syneren Technologies Corp. (Syneren) filed a bid protest action challenging the new awards in the trial court. The next day, CSI also commenced an action challenging the agency's awards, which the trial court consolidated into one action.

On July 20, 2023, the agency amended its Source Selection Plan to remove two voting members of the TET and add one voting member of the TET because the two members left the agency. The agency's TET then again evaluated the technical offers and issued a third amended technical evaluation report on July 23, 2023. That same day, the SSA executed a third amended Source Selection Decision Document. One day later, the agency issued

notices that it had terminated all the awards for convenience a second time. The corrective action was undertaken, in part, in response to plaintiffs' complaints. In its new decision, the SSA found that the offers from CSI and other plaintiffs remained unsatisfactory and did not offer the best value to the government. The agency therefore did not award these offerors a contract. Instead, the new SSA again awarded contracts to the 15 original awardees. CSI and others then amended their complaints in the pending bid protest action to challenge this corrective action.

The trial court denied CSI's protest. It held that the agency's final evaluation was the operative award decision before the court, and that the agency's decision was rational and supported by the record. The trial court made clear that it "consider[ed] the final evaluation as the operative award decision" because the agency had "jumped through all the procedural hoops" to "narrow the issues in dispute"—namely, "cancel[ling] all the prior contract awards, reconstitut[ing] and reconven[ing] the technical evaluation team to re-evaluate proposals," "issu[ing] a new decision document" from the SSA, and "issu[ing] new contracts." *Syneren Techs. Corp. v. United States*, 168 Fed. Cl. 756, 764 (2023). The trial court also rejected CSI's position that the agency should have sought a voluntary remand before implementing its corrective action, and it determined that the agency had not cut any procedural corners in its corrective action. *See id.* at 771–73.

CSI timely filed a notice of appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We "review[ ] the trial court's determination on the legal issue of the government's conduct, in a grant of judgment upon the administrative record, without deference." *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1309 (Fed. Cir. 2016) (citation omitted). "[W]e review anew the

question of whether the procurement decision of the [agency] was arbitrary and capricious under the APA." *Id.*

We follow a two-step process in determining whether to set aside a contract award, "covering both irrationality errors and legal errors." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021). "We first ask whether the agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; if so, we ask whether the error was prejudicial." *Id.* (cleaned up). Under the APA, courts give considerable deference to procurement decisions, sustaining them "unless the action does not evince rational reasoning and consideration of relevant factors." *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021) (cleaned up).

### III

### A

We first address alleged legal errors in the agency action. On appeal, CSI argues that the agency was not permitted to unilaterally terminate the awards for convenience and take corrective action. We disagree.

In the bid protest context, corrective action is an "agency action, usually taken after a protest has been initiated, to correct a perceived prior error in the procurement process, or, in the absence of error, to act to improve the competitive process." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 986 n.1 (Fed. Cir. 2018) (citation omitted). We have broadly recognized, as did our predecessor court, that administrative agencies "possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." *Hekmati v. United States*, 51 F.4th 1066, 1070 (Fed. Cir. 2022) (citation omitted); *see also Gratehouse v. United States*, 512 F.2d 1104, 1109 (Ct. Cl. 1975). This includes the inherent power of an

administrative agency to change an earlier decision if it does so in a reasonable manner, within a reasonable period. *Gratehouse,* 512 F.2d at 1109. There are, however, limitations to this inherent power to reconsider and redecide. *Hekmati,* 51 F.4th at 1070–71, 1070 n.2. Specifically, an agency may not exercise its inherent authority in a manner contrary to statute; must follow any expressly recited procedures for reconsideration in relevant statutes; must give notice of the intent to reconsider, within a reasonable time; and may not reconsider in a manner that would be arbitrary, capricious, or an abuse of discretion. *Id.*

Here, the proper inquiry is whether any statute or regulation prohibits the unilateral use of corrective action. *See Tyler Constr. Grp. v. United States,* 570 F.3d 1329, 1333 (Fed. Cir. 2009) ("[T]he proper inquiry is not whether the FAR authorizes the use of [the challenged] contracts for a procurement of construction, but whether there is any statutory or regulatory provision that precludes such use."). We are unaware of any provision in either title 41, which governs public contracts, or the Tucker Act, which provides jurisdiction over bid protests, that prohibits an agency from taking unilateral corrective action in response to a challenged agency decision once a suit has been filed. CSI does not identify any.

Nor is it of any moment that, as CSI contends on reply, the typical procedure for corrective action involves first announcing the action, then filing a motion to dismiss the case as moot, tendering a notice of voluntary dismissal, or seeking voluntary remand. Again, nothing in title 41 or the Tucker Act *requires* that these procedures be observed. And Syneren agreed at trial that the government can take unilateral corrective action to moot an entire case. J.A. 2973. The narrower course taken here by the agency—canceling a prior decision, rendering it moot, then narrowing the issues in dispute by addressing certain of plaintiffs' complaints head-on via a new action—is hardly more objectionable. Thus, agencies have the inherent authority

to terminate awards and take corrective action while litigation is pending, provided the agency gives notice;[1] does not act contrary to statute; and does not reconsider in a manner that is arbitrary, capricious, or an abuse of discretion.

B

CSI makes several additional legal arguments to contend that the agency's "post-protest 'corrective action' and second purported re-evaluation were arbitrary and capricious under the APA." Appellant's Opening Br. 23. First, relying on the Supreme Court's decision in *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020), CSI argues that "the APA does not permit an executive agency to 'cut corners' by rendering a new decision to support its actions in the heat of litigation." *Id.* (citing *Regents*, 591 U.S. at 22–25).

We reject CSI's suggestion that this case is controlled by *Regents*. As an initial matter, *Regents* was situated within the context of administrative rulemaking, and CSI offers us no compelling reason to cut-and-paste the APA's substantive limits from this milieu into the unrelated landscape of individual agency procurements. True, the Tucker Act applies the *standards of review* set forth by 5 U.S.C. § 706 in bid protest actions. 28 U.S.C. § 1491(b)(4). This

---

[1]    Here, the agency provided "written notices and debriefings" to CSI. *Syneren*, 168 Fed. Cl. at 771. While CSI notes cursorily that this notice came *after* the challenged second corrective action, it has not mounted a substantial challenge to the sufficiency of the notice received. Indeed, as noted, CSI and other plaintiffs were able to amend their complaints after receiving this notice from the agency to respond to the corrective action. CSI therefore fails to demonstrate any harm resulting from the agency's post-corrective-action provision of notice.

does not mean, however, that the *substantive and procedural* requirements of the APA that govern agency rulemaking also apply to government procurement actions. Certain APA provisions—for instance, the need for notice and comment during rulemaking—are entirely inapplicable in the bid protest context. *See* 5 U.S.C. § 553(a)(2).

Even if CSI is correct that the *Regents* framework applies to agency procurements, it does not prohibit the unilateral corrective action taken here. As CSI argues to us, "the *Regents* framework sets forth the agency's choices *on remand*." Appellant's Opening Br. 24. Here, the agency did not seek a remand, and the trial court did not order one after determining that the agency's contract awards rested on inadequate grounds. Instead, as was within its power, the agency terminated all the awards for convenience and unilaterally took corrective action, responsive to the protesters' complaints, to issue new awards. This corrective action cancelled the agency's previous decision, rendering it a nullity, and "'deal[t] with the problem afresh' by taking *new* agency action," which is perfectly permissible under the APA. *Biden v. Texas*, 597 U.S. 785, 808 (2022) (quoting *Regents*, 591 U.S. at 21). This is the case even where the agency, as here, reaches the same result in the new action. *See id.* at 813. *Regents* is therefore inapposite.

CSI also argues that the trial court's decision is contrary to our law concerning voluntary remand. CSI relies on *SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001), to argue that we "recognize[ ] only one mechanism through which an agency may conduct a re-evaluation while a bid protest action remains pending"—the agency "may move for voluntary remand." Appellant's Opening Br. 25 (emphasis omitted) (citing *SKF*, 254 F.3d at 1029). But *SKF* "concern[ed] the obligation of a *court* to *remand* a case to an administrative agency upon the agency's change in policy or statutory interpretation." *SKF*, 254 F.3d at 1025 (emphasis added). Indeed, the underlying action in *SKF* was initiated when the agency approached the Court

of International Trade seeking remand so that it could reevaluate its earlier decision, without revocation or cancelation of that earlier decision. *See id.* at 1026. Here, the agency did not seek to go back to the drawing board on an open decision based on some intervening change but rather canceled its prior decision and proceeded from scratch with its corrective action. In these circumstances, *SKF* is inapposite and does not mandate remand. Thus, CSI's arguments regarding remand are not relevant when an agency terminates awards for convenience and takes corrective action to issue new awards. If an agency did not terminate the awards, but instead desired to supplement the record of the pending awards, there would be a different question on appeal. But, given the agency's inherent power to reconsider its own decisions, as well as the lack of statutory directive to the contrary, the agency was permitted to terminate the awards for convenience and take corrective action to issue new awards without leave of the trial court. CSI thus demonstrates no legal error in the agency's conduct that would render this conduct arbitrary and capricious.

IV

Finally, we address CSI's argument that the final award lacked a rational basis because it breached the duty of good faith and fair dealing during its re-evaluation of CSI's proposal. As an initial matter, there is a presumption of good faith in the acts of government officials carrying out corrective action. *Chapman L. Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007) (explaining the trial court is "required to assume that the Government would carry out the corrective action in good faith"). And "when a bidder alleges bad faith, in order to overcome the presumption of good faith on behalf of the government, the proof must be almost irrefragable," which "amounts to clear and convincing evidence." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (cleaned up).

CSI admits that it "has not alleged 'bad faith' as part of this appeal." Appellant's Reply Br. 18. Instead, CSI argues that the trial court "did not explain how [the agency's] 're-evaluation' could have reached anything but a predetermined result." *Id.* But the trial court determined that "the agency followed [its] decision in *Allicent*, [the agency's] re-evaluation of proposals was permissible, and the [agency's] decision rational." *Syneren*, 168 Fed. Cl. at 776. CSI's unsupported argument that the agency's corrective action was not genuine does not overcome the presumption that the government would carry out the corrective action in good faith. Thus, the agency's final award had a rational basis, and was not arbitrary, capricious, or an abuse of discretion.

V

We have considered CSI's remaining arguments and find them unpersuasive. We affirm the trial court's decision denying CSI's bid protest. The agency possesses the inherent authority to terminate awards and take corrective action without leave of court. And the agency's final award was not arbitrary, capricious, or an abuse of discretion.

**AFFIRMED**

COSTS

No costs.